**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SPECIAL SHAPES REFRACTORY COMPANY, INC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:16-cv-01563-RDP |
| v. | ) | |
| | ) | |
| GALLO GLASS COMPANY, | ) | **OPPOSED** |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |

**MOTION TO TRANSFER AND STAY
PENDING RESOLUTION OF MOTION TO TRANSFER**

Gallo Glass Company ("Gallo"), by and through its counsel of record, moves this Court, pursuant to 28 U.S.C. § 1404(a), to enforce the mandatory forum-selection clause in the parties' Master Independent Contractor Agreement and transfer this matter to the United States District Court for the Eastern District of California, a forum where another, larger complex action is pending between these, and other, parties. Gallo further moves the Court to stay this matter, including, but not limited to, the filing of a responsive pleading, pending ruling on the motion to transfer.  Counsel for Gallo has conferred by telephone with counsel for Plaintiff Special Shapes Refractory Company, Inc. ("Special Shapes") regarding the issues raised herein and the relief sought.  Special Shapes opposes both the motion to transfer and a stay to the extent sought herein.[1]

As support for these motions, Gallo shows the following:

---

[1] Counsel for Special Shapes does not oppose a stay of forty-five (45) days, but does oppose a stay after forty-five (45) days if the motion to transfer remains pending at that time.

## BACKGROUND

### A.      The Parties

Gallo is in the business of manufacturing a wide array of bottles and glassware to serve the needs of the wine industry. Like other companies in the glass industry, Gallo's products are produced in a facility with glass furnaces. Gallo operates four industrial glass furnaces at its headquarters in Modesto, California. Gallo uses the furnaces to melt sand and other components into molten glass, which is then molded to make bottles. Although Gallo is a glassmaker, it is not in the business of furnace construction or design. Gallo instead relies on contracts with outside experts to design, engineer, source materials for, construct, and maintain its glass furnaces. Refractory materials are a critical element of furnace construction.  Special Shapes Refractory Company, Inc. ("Special Shapes"), a manufacturer and designer of refractory materials, is a supplier to Gallo. Affidavit of George Nigel Dart, attached hereto as Exhibit A, ¶ 1.

### B.      The Master Contract That Governs Special Shapes And Gallo

To facilitate the provision of products from Special Shapes to Gallo, Special Shapes Refractory Co. and E. & J. Gallo Winery entered into a Master Independent Contractor Agreement (the "MICA") in 2006.  *See* MICA, attached as Exhibit 1 to Aff. of Dart (Exh. A), p. 1. The MICA was signed by an authorized representative of both E. & J. Gallo Winery and Special Shapes Refractory Co. *See id.*, p. 6. Both Gallo and Special Shapes - the parties to this action—are parties to the MICA.[2] Aff. of Dart, Exh. A, ¶¶ 4-5.

---

[2]      The MICA defines E. & J. Gallo Winery to mean and include itself and as well as "any parent, subsidiary, partner, joint venturer with, or Affiliate" of E & J Gallo Winery. MICA, Exh. 1 to Exh. A, p. 1. The MICA defines "Affiliate" as "any corporation, partnership, limited liability company or proprietorship in which at least 50% of the equity is directly or indirectly beneficially owned by persons who or entities which are directly or indirectly the beneficial owners of at least 50% of the equity of [E &

The MICA—true to its name—is a broad, master contract that sets forth the general terms and conditions that govern the relationship between Gallo and Special Shapes with respect to products supplied by Special Shapes. MICA, Exh. 1 to Aff. of Dart (Exh. A), p. 1. The MICA, as a master agreement, does not itself provide for the sale of a certain quantity of Special Shapes's products. Rather, it contemplates discrete product purchases through Gallo purchase orders, referred to in the MICA by that designation and also as a Project Work Order ("PWO"). *Id.*, ¶ 1. The MICA provides that the "Contract Documents," which include, among other things, the MICA and Gallo purchase orders (and which do not include Special Shapes's quotations or other Special Shapes documents), are "the complete and exclusive statements" between Gallo and Special Shapes with respect to materials supplied to Gallo, thereby "superseding all other communications, whether oral or written." *Id.*, ¶ 2.a.

## 1. The MICA's "Limited Acceptance" Clause

The MICA contains a clause regarding limited acceptance under which Special Shapes agreed to be bound by the MICA for products it delivered, regardless of any form or terms and conditions from Special Shapes accompanying the sale. Subsection 14.i. provides:

> Limited Acceptance. Acceptance of the terms and conditions of this MICA is expressly limited to as stated herein. Any additional or different terms and conditions proposed by Vendor [Special Shapes] are objected to and rejected. Any terms inconsistent with or additional to the terms set forth in this MICA which may be included with a purchase order, proposal, acknowledgment invoice, or other document of Vendor will not

---

J.] Gallo [Winery]." *Id.* at p. 1. Gallo is a wholly-owned subsidiary of E. & J. Gallo Winery. *See* Aff. of Dart, ¶ 4. Accordingly, Gallo is an "Affiliate" of E. & J. Gallo Winery for purposes of the MICA.

Further, the MICA was amended in 2012 to reflect that Special Shapes Refractory Co. changed its name to Special Shapes Refractory Company, Inc. *See* Amendment to MICA, attached as Exhibit 2 to Aff. of Dart (Exh. A). The Amendment, which was signed by an authorized representative of both E. & J. Gallo Winery and Special Shapes Refractory Company, Inc., provides that, effective on the date the MICA was originally executed in 2006, all references to Special Shapes Refractory Co. are deemed to refer to Special Shapes Refractory Company, Inc. *Id.*

be binding on Gallo unless specifically, expressly incorporated into the applicable Contract Documents. The manufacture or delivery of Equipment or the performance of Services by Vendor will constitute an acceptance by the Vendor of the terms and conditions of the Contract Documents, and Vendor's delivery of any Equipment or Services to Gallo without an executed Project Work Order will be governed by the terms of the Contract Documents. By providing Equipment or performing Services, without other executed Contract Documents, Vendor waives any and all terms and conditions of any proposal, quotation, acknowledgment or other form that are inconsistent with terms and conditions contained in the Contract Documents.

*Id.*, ¶ 14.i.

## 2. The "No Modification Unless In Writing" Clauses

Special Shapes, in two clauses, further agreed in the MICA that the terms of the Contract Documents may not be modified, amended, or waived and that such terms control over inconsistent terms in other documents unless the modification is evidenced by a writing signed by both parties. Subsection 2.b. and 14.h, which are collectively "no modification unless in writing" clauses, provide:

The Contract Documents are binding on the Parties [Gallo and Special Shapes] and their terms control over any conflicting terms, unless a Contract Document is mentioned by name and expressly negated, modified, or limited by a writing signed by an authorized representative of Vendor and by an authorized representative of Gallo.

*Id.*, ¶ 2.b.

Amendment and Modification: Subject to subsection 2(b) with respect to modification of this MICA, no term or provision of this MICA or any Contract Document may be amended, waived, released, discharged or modified in any respect except in a writing signed by respective authorized representatives of the Parties [Gallo and Special Shapes] to the Contract Documents.

*Id.*, ¶ 14.h.

## 3. The "Non-Waiver" Clause

Special Shapes and Gallo also agreed upon an additional, strict "non-waiver" clause in subsection 14.c. of the MICA. That provision provides:

4

> _Waiver._ The failure by either Party to enforce any provision of the Contract Documents in any instance is not a waiver of that or any other provision. No waiver will be binding unless executed in writing by the party making the waiver.

_Id._, ¶ 14.c.

### 4. The Forum-Selection Clause

In addition, Gallo and Special Shapes also negotiated a choice-of-forum, or forum-selection, clause in the MICA. Subsection 12.b. provides:

> Any cause of action between the Parties, whether under the Contract Documents or otherwise, may be brought only in a court having jurisdiction and venue in Stanislaus County for state court causes of action and in the Eastern District of California for federal court causes of action. Vendor waives any objection on the basis of personal jurisdiction or venue.

_Id._, ¶ 12.b.

### C.    The Furnace No. 4. PWOs

After executing the MICA in 2006, Special Shapes and Gallo then entered into a Furnace No. 4 Crown Refractory PWO commencing on July 31, 2008 ("Special Shapes 2008 PWO"), under which Special Shapes was to provide a wide variety of refractory materials for use with Furnace No. 4 at Gallo's facility in California.  Aff. of Dart, Exh. A, ¶ 6; Special Shapes 2008 PWO, attached as Exhibit 3 to Aff. of Dart (Exh. A). The Special Shapes 2008 PWO contained a provision entitled "Standard Warranties" which warranted:

> [a]ll Services performed hereunder will be executed in a professional, skillful and craftsmanlike manner to the reasonable satisfaction of Gallo.  Under no circumstances will workmanship be less than the highest accepted standards for industry practices for the kind of Services performed.  All Equipment furnished by Vendor for the Project will be new, high grade, of first-class quality and free of defects.  In addition to all warranties provided by law and included in the Contract Documents, all Equipment will conform to specifications, drawings, samples and/or other descriptions furnished by Vendor or specified by

> Gallo, will be merchantable, of good material and workmanship, and will be fit and sufficient for Gallo's particular purposes, namely producing container glass at our plant, for a period of twelve (12) months from date of Gallo's Acceptance but at the latest 18 months after receipt of the equipment. Gallo's approval of specifications, drawings, samples and/or other descriptions furnished by Vendor will not relieve Vendor of its obligations hereunder.

Special Shapes 2008 PWO, Exh. 3 to Aff. of Dart (Exh. A), ¶ 7.1.

The Special Shapes 2008 PWO contained a provision entitled "Performance Guarantees" which provided that Special Shapes "guarantees that the completed Project will meet or exceed the performance guarantees of quality and quantity within the tolerance values defined in the Project Work Order Documents," *id.*, ¶ 10.0, and that Special Shapes would "achieve all of the technical specifications agreed to by [Special Shapes] and Gallo, and the completed Project will be capable of effectively performing its specific tasks(s) under those specifications," *id.*, ¶ 10.1.

Special Shapes entered into four further PWOs with Gallo related to Furnace No. 4, all commencing on July 3, 2012: (a) the Furnace No. 4 Bonded AZS Refractory PWO; (b) the Furnace No. 4 Forehearth Channel Refractory PWO; (c) the Furnace No. 4 Low Lime Silica Crown PWO; and (d) the Furnace No. 4 Bonded Refractory PWO. Under the terms of all four PWOs, Special Shapes agreed to provide various additional refractory materials for use in Furnace No. 4. Each of these PWOs contained the same "Standard Warranties" and "Performance Guarantees" language described above. Furnace No. 4 PWOs, attached as Exhibit 4 to Aff. of Dart (Exh. A).

Under the terms of the agreements between Gallo and Special Shapes, Special Shapes delivered the refractory materials called for in the Contract Documents (a term defined in the MICA), and Gallo paid all amounts due to Special Shapes. Aff. of Dart, Exh. A, ¶ 8.

**D. The Failure Of Furnace No. 4 And The Resulting Lawsuit Against Special Shapes**

On or about the early morning of February 16, 2016, an approximately four-foot-high by six-foot-wide section of Furnace No. 4's throat-end wall collapsed inward, requiring an immediate shutdown, causing property damage, and rendering the furnace unusable. Aff. of Dart, Exh. A, ¶ 9. It is Gallo's contention that the failure of Furnace No. 4 was attributable, at least in part, to refractory materials provided by Special Shapes which failed to comply with the necessary specifications called for in Furnace No. 4's design, construction, and maintenance. *Id.* The failure of Furnace No. 4 has caused Gallo to incure significant damages—in excess of twenty million dollars— and is the subject of a Complaint against Special Shapes, among others, filed on behalf of Gallo in the United States District Court for the Eastern District of California. *See* Complaint (Eastern District of California), attached as Exhibit 5 to Aff. of Dart (Exh. A).[3]

**E. Special Shapes' Claims And Inconsistent Forum-Selection Clause**

In this action, Special Shapes attempts to assert a single claim for breach of contract against Gallo predicated on three "Quotations"—Quotations 3485, 3491, and 3494-2—that Special Shapes sent to Gallo to provide refractory material to repair Furnace No. 4. *See* Complaint, doc. 1-1, ¶¶ 8-21, 33-41. Special Shapes alleges that Gallo refused to take delivery of and pay for the products that were the subject of the three Quotations. *Id.*, doc. 1-1, ¶¶ 14-21. Special Shapes seeks to recover the unpaid price for those three Quotations, which it alleges amounts to $345,251.47. *Id.* at ¶¶ 21, 41.

Special Shapes' alleges that its Quotations were accompanied by Special Shapes Refractory Company, Inc. Terms and Conditions (the "Special Shapes Terms and Conditions"), *see id.* at ¶¶ 22-27, which, along with the Quotations and corresponding

---

[3]     The action in the Eastern District of California also asserts claims against an additional defendant—Nikolaus Sorg GMBR & Co. KG, a German Corporation with its principal place of business located in Lohr am Main, Germany—over whom this Court lacks personal jurisdiction. *See* Complaint (Eastern District of California), Exh. 5 to Aff. of Dart (Exh. A).

Special Shapes Sales Orders at issue, are attached to Special Shapes's Complaint. The Special Shapes Terms and Conditions contain a forum-selection clause, which provides that "[a]ny action at law, suit in equity or other proceeding with respect to the Sale Documents must be brought and maintained in the federal or state courts of record situated in Jefferson County, Alabama."[4] *See* Special Shapes Terms and Conditinos, Exhibit A to Complaint, doc. 1-1, p. 28, ¶ 20.[5]

Between 2006 when the MICA was executed and the failure of Furnace No. 4 in 2016, Special Shapes and Gallo did business pursuant to the MICA, entering into at least ten PWOs. Aff. of Dart, Exh. A, ¶ 10. The transactions that are the subject of the three Special Shapes Quotations are no different—they were subject to the Contract Documents, specifically the MICA and Gallo Purchase Orders or PWOs. *See* Aff. of Dart, Exh. A, ¶ 11.

Quotation 3494-2 was part of Gallo Purchase Order No. 993578.[6] Aff. of Dart, Exh. A, ¶ 11. Gallo Purchase Order No. 993578 included terms and conditions that state, in pertinent part: "If the Parties to this Purchase Order have entered into a Master Independent Contractors ("MICA") and/or a Master Agreement ("MA"), then the Purchase Order is governed by the Contract documents as that term is defined in Section 2 of the MICA and Section 1.2 of the MA." Gallo Purchase Order No. 993578, attached as Exhibit 6 to Aff. of Dart (Exh. A), p. 2 (Terms and Conditions), ¶ 2.

---

[4] The term "Sale Documents" is defined as the Terms and Conditions and the Quotation. *See* Special Shapes Terms and Conditions, Exhibit A to Complaint, doc. 1-1, p. 27, ¶ 1.

[5] References to page numbers for Exhibits to Plaintiff's Complaint that are part of doc. 1-1 are references to the page number appearing at the top of the page generated by CM/ECF.

[6] The fact that 3494-2 is part of Gallo Purchase Order No. 993578 is further evidenced by documents submitted by Special Shapes along with its Complaint. Quotation 3494-2 was submitted as part of Exhibit C to the Complaint. *See* doc. 1-1, p. 53. In the email dated March 8, 2016, a copy of which was also submitted by Special Shapes as part of Exhibit C to its Complaint, Gallo told Special Shapes to use Purchase Order No. 993578 for Quotation 3494-2. *See* Email, Exhibit C to Complaint, doc. 1-1, p. 51.

Quotations 3491 and 3485 were part of Gallo Purchase Order No. 993480. Aff. of Dart, Exh. A, ¶ 11.[7] Gallo Purchase Order No. 993480 similarly included terms and conditions that state, in pertinent part: "If the Parties to this Purchase Order have entered into a Master Independent Contractors ("MICA") and/or a Master Agreement ("MA"), then the Purchase Order is goverend by the Contract documents as that term is defined in Section 2 of the MICA and Section 1.2 of the MA." Gallo Purchase Order No. 993480, attached as Exhibit 7 to Aff. of Dart (Exh. A), p. 3 (Terms and Conditions), ¶ 2.

As evidenced by the documents Special Shapes submitted with its Complaint and the Affidavit of George Nigel Dart, Gallo never signed the Special Shapes Quotations, Sales Orders, or terms and conditions at issue so as to modify, amend, or waive any part of the MICA or Contract Documents. Aff. of Dart, Exh. A, ¶ 12; *see also* Special Shapes Quotations and Terms and Conditions, Exhibits A & B to Complaint, doc. 1-1, pp. 18-28, 31-35, 44-49, 52-55, 57-58.

## ARGUMENT

### I. The Forum-Selection Clause In The MICA Is Mandatory And Covers Special Shapes's Claims

To determine if a forum-selection clause encompasses a particular type of claim, the court looks to its language. *Slater v. Energy Servs. Grp. Int'l Inc.,* 634 F.3d 1326, 1330 (11th Cir. 2011). "Under general contract principles, the plain meaning of a

---

[7] The fact that Quotations 3491 and 3485 were part of Gallo Purchase Order No. 993480 is further evidenced by documents submitted by Special Shapes along with its Complaint. Quotations 3491 and 3485 are part of Exhibit B to Plaintiffs' Complaint. *See* doc. 1-1, pp. 31-32, 34-35. Immediately following these Quotations, is a Scope of Work Attachment for Gallo Glass Furnce 4 Repair, also attached as part of Exhibit B to Plaintiffs' Complaint. Scope of Work Attachment, doc. 1-1, pp. 36-43. That Scope of Work Attachment states: "This Scope of Work (the "SOW") is part of Project Work Order # 993480 (the "PWO") made by and between Gallo and Vendor. This SOW will be governed by the terms of the PWO and the Contract Documents." *Id.*, doc. 1-1, p. 38. Further, the Sales Orders from Special Shapes submitted with its Complaint that correspond to Quotations 3491 and 3485 are the Sales Orders with Order Numbers 7503 and 7504. *See* Sales Orders, Exhibit B to Complaint, doc. 1-1, pp. 44-45, 48-49. Those two Sales Orders reference "P.O. Number" 993480. *Id.* Finally, the email sent by Special Shapes to Gallo Glass and submitted by Special Shapes as Exhibit E to its Complaint states, in pertinent part: "Instructed by you, E&J Gallo will cancel your PWO #993480 with Special Shapes Refractory Company, Inc." Email, Exhibit E to Complaint, doc. 1-1, p. 60.

contract's language governs its interpretation." *Id.* (citation omitted). "The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement." *Id.* (citation omitted).

The Eleventh Circuit has characterized forum-selection clauses as either "permissive" or "mandatory." *Id.* (citation omitted). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause . . . dictates an exclusive forum for litigation under the contract." *Id.* (citation, bracket, and internal quotations omitted).

The mandatory forum-selection clause in paragraph 12(b) of the MICA states:

> Any cause of action between the Parties, *whether under the Contract Documents or otherwise*, may be brought *only* in a court having jurisdiction and venue in Stanislaus County for state court causes of action and in the Eastern District of California for federal causes of action. Vendor waives any objection on the basis of personal jurisdiction or venue.

MICA, Exh. 1 to Aff. of Dart (Exh. A) ¶ 12.b (emphasis added). Based on a plain reading of the clause, it is clear that that the forum designation is not permissive, but is mandatory. The clause's use of the word "only" states a requirement for venue in Stanislaus County or the Eastern District of California, and those two venues, alone. *See Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("The contract provision, "Venue shall be in Broward County," because it uses the imperative "shall," is most reasonably interpreted to mandate venue in Broward County, and Broward County alone.").

Furthermore, Special Shapes's breach of contract claim falls squarely within the scope of the forum-selection clause. The relationship between the parties exists only by virtue of, and is exclusively governed by, the Contract Documents, one of which is the

MICA itself. Further, the three Quotations at issue—3485, 3491, and 3494—were submitted as part of the process governed by the MICA and other Contract Documents (as defined by the MICA), thereby bringing them within the scope of the forum-selection clause. Quotation 3494-2 was part of Gallo Purchase Order No. 993578, Aff. of Dart, Exh. A, ¶ 11, and Quotations 3491 and 3485 were part of Gallo Purchase Order No. 993480, Aff. of Dart, Exh. A, ¶ 11. Pursuant to the MICA's limited acceptance, non-modification, and non-waiver provisions, Special Shapes's claims are necessarily claims brought under the Contract Documents, regardless of any form— including the Quotations and the Special Shapes Terms and Conditions—that may have accompanied the Quotations.

Even assuming, for argument's sake, that the three Quotations at issue were not issued pursuant to Gallo Purchase Orders, which are part Contract Documents, the MICA's limited acceptance clause brings a transaction within the Contract Documents where Special Shapes provides products without a Gallo Purchase Order or PWO. The clause states that Special Shapes's "delivery of any Equipment or Services to Gallo without an executed Project Work Order will be governed by the terms of the Contract Documents." MICA, Exh. 1 to Aff. of Dart (Exh. A), ¶ 14.i. This is precisely the type of dispute that the MICA's forum-selection clause is designed to account for—an alleged breach of contract claim related to a sale of refractory material by Special Shapes to Gallo. Special Shapes's Terms and Conditions are a nullity in light of the MICA's limited acceptance, non-modification, and non-waiver provision, but even if they were not, the MICAs forum-selection clause is explicitly applicable to claims between Gallo and

Special Shapes whether under "the Contract Documents *or otherwise*." *Id.*, Exh. 1 to Aff.

of Dart (Exh. A), ¶ 12.b.

There can be no serious dispute that the forum-selection clause encompasses

Special Shapes's claims.

## II.     The MICA's Mandatory Forum-Selection Clause Controls Over The Inconsistent Forum-Selection Clause In The Special Shapes Terms And Conditions—Terms And Conditions That Gallo Never Signed

The MICA's forum-selection clause controls over the conflicting forum-selection

clause in the Special Shapes's Terms and Conditions, under both Alabama and California

law.[8] Alabama and California enforce non-modification and non-waiver clauses. Article

2 of the UCC, as adopted in California, provides:

> A signed agreement which excludes modification . . . except by a signed
> writing cannot otherwise be modified or rescinded, but except as between
> merchants such a requirement on a form supplied by the merchant must be
> separately signed by the other party.

Cal. Com. Code § 2209(2). Article 2 of the UCC in Alabama is identical. *See* Ala. Code

(1975) § 7-2-209(2).

With respect to the application of 2-209/2209 to the facts here, the Central District

of California's decision in *Vizio Inc. v. Gemtek Tech. Co.*, No. SACV13160JLSRNBX,

2014 WL 10538995 (C.D. Cal. Aug. 27, 2014), is instructive. There, Vizio and Gemtek

entered into a binding master Supply Agreement whereby Gemtek would manufacture

and supply Vizio with electronic products. *Id.* at *1. A dispute arose, and Vizio filed an

action for breach of contract against Gemtek. Gemtek counterclaimed for, among other

---

[8]     The transactions between Special Shapes and Gallo Glass were for the sale of goods—refractory products—and, accordingly, trigger the Uniform Commercial Code (UCC). *See* Ala. Code (1975) § 7-2-102 ("this article applies to transactions in goods"). The MICA itself also provides the transactions thereunder are for the sales, not the lease or consignment, of goods.  MICA, Exh. 1 to Aff. of Dart (Exh. A), ¶ 1.

things, damages for leftover products—products that it had manufactured but that Vizio had not taken delivery of. *Id.* at *1-2. As the case approached trial, Vizio filed a motion *in limine*, arguing that Gemteck was contractually precluded from recovering damages for leftover products because the Supply Agreement's terms contained a specific purchase order protocol and did not obligate Vizio to pay for goods outside of that protocol. *Id.* at *2. Gemtek countered that the parties abandoned the protocol and, in doing so, modified the Supply Agreement. The Court disagreed, reasoning that while "Gemtek is correct that course of performance is ordinarily relevant in determining whether the parties have waived or modified any contractual term that is inconsistent with their performance," "this is not the case where the parties' signed agreement excludes modification except by a signed writing, as the Supply Agreement does." *Id.* at *3 (citing Cal. Com. Code § 2209(2)). The Court then held: "Because the Supply Agreement's provisions concerning purchase orders may not be supplemented or modified by the parties' course of performance, Gemtek cannot recover for leftover product where it did not receive a purchase order." *Id.*

The same reasoning applies here. The intent of the parties, as evidenced by the MICA—a contract signed by both parties—could not be clearer. The sales transactions for which Special Shapes seeks recovery were issued pursuant to Gallo Purchase Orders within the protocol prescribed by the MICA and, consequently, the MICA controls. Regardless though, the effect of the MICA's limited acceptance clause is that manufactured but undelivered products, such as those that Special Shapes seeks recovery for here, are governed by the Contract Documents, one of which is the MICA itself. Special Shapes cannot alter, or cause a waiver of, the MICA—a contract it signed and

performed under for years—simply by unilaterally sending its own Quotation with the inconsistent Special Shapes Terms and Conditions, unless Gallo agreed to the modification by signing the Quotations or waived the MICA in a signed writing. The MICA's non-modification and non-waiver clauses are enforceable. *See S. Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1117 (5th Cir. 1984) ("Under the Texas version of the Uniform Commercial Code, '[a] signed agreement which excludes modification . . . except by a signed writing cannot be otherwise modified. . . .' Hence no-oral-modification clauses are binding in Texas.") (quoting Texas Bus. & Comm.Code Ann. § 2.209(b)); *see also Johnson v. Cent. Bank of the S.*, 514 So. 2d 969, 969 (Ala. 1987) (citing *Williams v. Ford Motor Credit Co.*, 435 So.2d 66, 68 (Ala. 1983) and *Hale v. Ford Motor Credit Co.*, 734 So.2d 849, 853 (Ala. 1979)) (enforcing non-modification and non-waiver clauses). Gallo never signed the Special Shapes Quotations, Sales Orders, or Terms and Conditions.[9] Nor did Special Shapes, for that matter, sign its Quotations or Terms and Conditions—there is not even a place for a signature. The MICA was, and is, the "complete and exclusive" statement of the relationship between the parties.

### III. The MICA's Forum-Selection Clause Controls The Analysis Under § 1404 and Requires Transfer

"Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S. Ct. 2239, 2245, 101 L.

---

[9]      If Special Shapes desired for an Alabama forum selection clause to govern transactions with Gallo, it could have, and should have, included that provision in the original agreement of the parties. *See Arizona Retail Sys., Inc. v. Software Link, Inc.*, 831 F. Supp. 759, 766 (D. Ariz. 1993) ("Section 2–207 was drafted to ensure neutrality between contracting parties—i.e., to ensure that a party, usually the selling party, does not gain an advantage merely by being the last one to send a form. To accept TSL's argument in this case would allow TSL to profit by sending a last "form," the terms of which could have been included in any original agreement between the parties.")

14

Ed. 2d 22 (1988)) ("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in Manhattan. We therefore affirm the Eleventh Circuit order reversing the District Court's application of Alabama law."). The appropriate way to enforce a forum-selection clause is through the doctrine of *forum non conveniens*, which is codified by § 1404(a). *See*, *e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."). Section 1404(a), provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

"In the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). "When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered." *Id.* "[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *Id.* at 573 (11th Cir. 1989); *see also P & S Bus. Machines, Inc.*, 331 F.3d at 807 ("The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute.").

In *Atlantic Marine*, the Supreme Court articulated the process by which district courts are to address § 1404(a) when the parties have contractually chosen a forum. The Court affirmed "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). After reviewing the considerations for evaluating the typical case not involving a forum-selection clause, the Court held: "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" 134 S. Ct. at 581. As another Judge of this Court recently explained in *Guest Associates, Inc. v. Cyclone Aviation Prod., Ltd.*, 30 F. Supp. 3d 1278 (N.D. Ala. 2014):

> As noted in *Atlantic Marine,* when addressing the typical case of a motion to transfer venue under § 1404(a), "a district court ... must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)). The private factors generally relate to the "practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 581 n. 6. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum." *Id.*
>
> However, a valid forum-selection clause, as in this case, changes those rules in three ways: (1) "the plaintiff's choice of forum merits no weight" because the plaintiff already exercised its "venue privilege" at the time of contracting, (2) "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" because the parties "waive the right to challenge the preselected forum as inconvenient or less convenient," and (3) the transfer of venue "will not carry with it the original venue's choice-of-law rules" under *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), because that case's rationale (protecting the state-law advantages of the venue privilege) does not apply. *Atlantic Marine,* 134

S.Ct. at 581–83. Furthermore, "[b]ecause [the public-interest] factors will
rarely defeat a transfer motion, the practical result is that forum-selection
clauses should control except in unusual cases." *Id.* at 582. "In all but the
most unusual cases, 'the interest of justice' is served by holding parties to
their bargain." *Id.* at 583.

*Guest Associates, Inc.*, 30 F. Supp. 3d at 1283.

"The proper analysis, as set out above, is to balance the near controlling weight of

the forum-selection clause, representing a finding that all of the private-interest factors

fall in favor of the selected forum, against the public-interest factors, which, in almost all

cases, will not outweigh the forum-selection clause." *Guest Associates, Inc.*, 30 F. Supp.

3d at 1284.

Application of these factors here requires that this case be transferred to the

Eastern District of California. There is no authoritative reason why Special Shapes

should not be held to the forum-selection clause in the contract it negotiated and signed

with Gallo. In fact, the balance of the public-interest factors, like the forum-selection

clause, *favor* a transfer. [10]

First, this case is not limited to a controversy local to Alabama. Special Shapes's

products were supplied to Gallo in California and were used exclusively in California.

Indeed, as alleged in the Complaint filed against Special Shapes in the Eastern District of

California, the products were a cause of the catastrophic failure of Furnace No. 4 at

Gallo's California plant, resulting in extensive damages there. California has a significant

interest in this matter, where one of Gallo's primary defenses to the contract claim here is

the very basis of its action against Special Shapes in California—that Special Shapes's

---

[10]     Though it is not necessary to address the private interest factors related to convenience
given the forum-selection clause, it should be noted that convenience and economy also militate strongly in
favor of a transfer. The plant where Furnace No. 4 failed is in Stanislaus County, where Gallo is
headquartered, in the Eastern District of California.

products were defective and did not comply with specifications. Moreover, the MICA contains an enforceable choice-of-law provision requiring application of California law, and California courts generally are more familiar with California law than courts in Alabama. Third, the Northern District of Alabama and the Eastern District of California appear to have comparably busy dockets. On balance, then, these factors weigh in favor of a transfer.

The bottom line is that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a court decline to enforce a forum-selection clause," *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (citation omitted), and those extraordinary circumstances are completely absent here.

## IV.     The Court Should Stay These Proceedings Pending Resolution Of The Motion To Transfer

In order to conserve the resources of both the parties and this Court, Gallo respectfully asks this Court to stay this litigation pending the resolution of Gallo's motion to transfer. This Court has authority to stay the proceedings as part of its inherent power to control the outcome of the cases on its docket in an efficient and timely manner. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). (*citing McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir. 1982) ("The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice")). A stay of the current litigation pending a ruling on Gallo's request to transfer is warranted for several reasons.

First, a stay of the proceedings will conserve judicial resources and the resources of the parties, while promoting judicial economy. A continuation of the current litigation before resolution of the transfer issue would waste the resources of the Court and the parties if the motion to transfer is granted. At present, the only substantive document that has been filed is the Complaint. The Court has not expended any material resources on this action. Preserving this status *quo* will avoid needless effort from the Court in considering a motion to dismiss or responsive pleading, where the claims may soon be, and should be, transferred to another venue.

Second, Gallo seeks to transfer this matter to the Eastern District of California, where its action against Special Shapes to recover amounts in excess of twenty million dollars for the damage to Furnace No. 4 is pending. As explained above, the issues in that case are inextricably intertwined in this case. This is not a garden-variety breach of contract case; the bases of certain Gallo defenses here are the same as the bases of the Complaint against Special Shapes in the Eastern District of California—that Special Shapes was negligent and breached the Contract Documents by failing to comply with specifications and designing and manufacturing defective products. These issues, and the litigation incident to those issues, are complex, to say the least. A stay would avoid a duplication of significant effort on these complex issues, and avoid the inconvenience of litigating a matter in Alabama that requires the examination of physical evidence, witnesses, and documents, almost all of which are located in California. Not only that, but the failure of Furnace No. 4 implicates not only Special Shapes' products, but also services provided by Sorg, a German corporation that is not subject to personal jurisdiction in this forum.

Third, Gallo is represented by different counsel in the Eastern District of California, and the undersigned will not be involved in the litigation in that Court should the case be transferred.

Finally, a stay of the current proceedings would not do injustice to Plaintiff because this case is in its infancy. The limited time that the stay would be in effect would prevent any prejudice such as might be argued to arise from a lengthy delay. Indeed, some courts have effectively granted a stay by simply ruling on a motion to transfer before ruling on a motion to stay (and denying the motion to stay as moot when the transfer is granted). *See Patent Compliance Grp., Inc. v. Brunswick Corp.*, No. 3:10-CV-0287-K, 2010 WL 10991912, at *5 (N.D. Tex. July 21, 2010) (granting motion to transfer under § 1404(a) and denying as moot motion to stay pending resolution of the motion to transfer); *Aurora Bank FSB v. Home Loan Ctr., Inc.*, No. 12-CV-02888-CMA-MJW, 2013 WL 2014182, at *4 (D. Colo. May 14, 2013) (granting motion to transfer under § 1404(a) and denying as moot motion to stay pending resolution of the motion to transfer).

The requested stay would simply freeze proceedings until the Court determines whether transfer is appropriate. Following the Court's ruling, Gallo would promptly file any documents responsive to Special Shapes's Complaint appropriate court, be it this Court or the putative transferee court. On these grounds, the Court should exercise its inherent power and stay this proceeding pending resolution of the motion to transfer. Gallo also submits that it has shown good cause for the requested stay.[11]

---

[11] As noted above in Footnote 1, Special Shapes's counsel does not oppose a stay of 45 days. Rather than grant a limited stay that would be revisited at the end of 45 days if the motion to transfer remains pending, Gallo submits that it makes more sense to stay the case pending resolution of the motion to transfer.

## <u>CONCLUSION</u>

For the foregoing reasons, Gallo respectfully requests that this Court transfer this cause to the United States District Court for the Eastern District of California and, in the interim and pending ruling on the request for transfer, stay this matter, including the deadline for Gallo filing a responsive pleading. Alternatively, and to the extent the motion to stay is denied, Gallo requests an extension of time of fourteen days following the denial of the motion to stay to answer or otherwise plead in response to Plaintiff's Complaint.

Respectfully Submitted,

/s/ J. Bradley Powell
One of the Attorneys for Defendant
Gallo Glass Company

OF COUNSEL:

Jackson R. Sharman (SHA048)
*jsharman@lightfootlaw.com*
J. Bradley Powell (POW042)
*bpowell@lightfootlaw.com*
David A. Rich (RIC093)
*drich@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700
(205) 581-0799 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Patton Hahn, Esq.
Vincent G. Nelan, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North
Wachovia Tower, Suite 1600
Birmingham, AL 35203

/s/ J. Bradley Powell
Of Counsel